**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**JENNIFER MIZELL, MARIA PAULDING, KATHLEEN PEAPPLES, VICTORIA ROSS, and NATHAN SIMPSON, individually and on behalf of those similarly situated,**

**Plaintiffs,**

**v.**

**THE UNIVERSITY OF PITTSBURGH MEDICAL CENTER,**

**Defendant.**

**Civil Action No. 1:24-cv-00016-SPB**

**Electronically Filed**

**Oral Argument Requested**

# BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23

David C. Kiernan
JONES DAY
555 California St., 26th FL.
San Francisco, CA 94104
Telephone: 415.626.3939
Fax: 415.875.5700
dkiernan@jonesday.com

Peter Schwingler
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Telephone: 612.217.8866
Fax: 844.345.3178
pschwingler@jonesday.com

Rebekah B. Kcehowski (PA ID No. 90219)
Anderson T. Bailey (PA ID No. 206485)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone: 412.391.3939
Fax: 412.394.7959
rbkcehowski@jonesday.com
atbailey@jonesday.com

*Counsel for Defendant UPMC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1
PLAINTIFFS' BACKGROUND ALLEGATIONS ..... 2
I. Plaintiffs Purport To Represent An Unspecified But Broad Class Of Workers ..... 2
II. The Proposed Class Is From Anywhere Within UPMC's Diverse Geographic Footprint, At Any Time Since 1996 ..... 3
III. The Proposed Class Allegedly Suffered Varying Forms Of Antitrust Impact, For Which Putative Class Members Seek Individualized Compensatory Damages ..... 4
LEGAL STANDARD ..... 6
ARGUMENT ..... 7
I. The Alleged Class Definition Is Far Too Vague, Amorphous, And Imprecise ..... 7
II. As Alleged, The Putative Class Cannot Satisfy Rule 23(b)(3)'s Predominance Requirement ..... 10
III. As A Matter Of Law, Plaintiff Cannot Pursue Any Class Claim Under Rule 23(b)(2) ..... 15
CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alabama v. Blue Bird Body Co.*,
573 F.2d 309 (5th Cir. 1978) ....................11

*Barnes v. Am. Tobacco Co.*,
161 F.3d 127 (3d Cir. 1998)....................15

*Blunt v. Lower Merion Sch. Dist.*,
262 F.R.D. 481 (E.D. Pa.)....................7

*Center City Periodontists, P.C. v. Dentsply Int'l, Inc.*,
321 F.R.D. 193 (E.D. Pa. 2017)....................9

*Coleman v. Commw. Land Title Ins. Co.*,
318 F.R.D. 275 (E.D. Pa. 2016)....................9

*Coleman v. Watt*,
40 F.3d 255 (8th Cir. 1994) ....................9

*Columbia Health Svcs. of El Paso, Inc. v. Columbia/HCA Healthcare Corp.*,
1996 WL 812934 (W.D. Tex. Dec. 23, 1996) ....................11, 12

*Conrad v. Jimmy John's Franchise, LLC*,
2021 WL 3268339 (S.D. Ill. July 23, 2021) ....................14

*Earnest v. GMC*,
923 F. Supp. 1469 (N.D. Ala. 1996)....................1, 7, 8

*Fluellen v. Wetherington*,
2003 U.S. Dist. LEXIS 21712 (N.D. Ga. Mar. 21, 2003)....................7, 9

*Gates v. Rohm & Haas Co.*,
655 F.3d 255 (3d Cir. 2011)....................2, 15

*Gonzalez v. Corning*,
317 F.R.D. 443 (W.D. Pa. 2016) ....................9

*Grandalski v. Quest Diagnostics Inc.*,
767 F.3d 175 (3d Cir. 2014)....................10

*Hohider v. UPS*,
574 F.3d 169 (3d Cir. 2009)....................15

*Huber v. Taylor*,
2011 WL 4553154 (W.D. Pa. Sept. 29, 2011)....................15

*In re Comp. of Managerial, Prof'l, & Tech. Employees Antitrust Litig.*,
2003 WL 26115698 (D.N.J. May 27, 2003)....................13

*In re Copper Antitrust Litig.*,
196 F.R.D. 348 (W.D. Wis. 2000)....................7

*In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*,
2013 WL 1145540 (D.N.J. Mar, 18, 2013)....................10

*In re Fla. Cement & Concrete Antitrust Litig.*,
278 F.R.D. 674 (S.D. Fla. 2012)....................16

*In re Flash Memory Antitrust Litig.*,
2010 WL 2332081 (N.D. Cal. June 9, 2010)....................16

*In re Google Play Store Antitrust Litig.*,
2022 WL 17252587 (N.D. Cal. Nov. 28, 2022)....................16

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008)....................10, 11

*In re Insulin Pricing Litig.*,
2024 WL 416500 (D.N.J. Feb. 5, 2024)....................17

*In re Railway Indus. Employee Antitrust Litig.*,
395 F. Supp. 3d 464 (W.D. Pa. 2019).................... passim

*Kline v. Sec. Guards, Inc.*,
196 F.R.D. 261 (E.D. Pa. 2000)....................10

*Kottaras v. Whole Foods Mkt., Inc.*,
281 F.R.D. 16 (D.D.C. 2012)....................16

*LaBauve v. Olin Corp.*,
231 F.R.D. 632 (S.D. Ala. 2005)....................7

*Loduca v. Wellpet LLC*,
2022 WL 2304308 (E.D. Pa. June 27, 2022)....................6

*Maderazo v. VHS San Antonio Partners, L.P.*,
2019 WL 4254633 (W.D. Tex. Jan. 22, 2019) ....................11

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012)....................6, 7, 9

*Mladenov v. Wegmans Food Mkts., Inc.*,
124 F. Supp. 3d 360 (D.N.J. 2015) ....................16

*Mueller v. CBS, Inc.*,
200 F.R.D. 227 (W.D. Pa. 2001) ....................1, 7

*Reed v. Advocate Health Care*,
268 F.R.D. 573 (N.D. Ill. 2009)....................11

*Robb v. Lock Haven Univ. of Pa.*,
2019 WL 2005636 (M.D. Pa. May 7, 2019)....................15

*Semenko v. Wendy's Int'l, Inc.*,
2013 WL 1568407 (W.D. Pa. Apr. 12, 2013)....................16

*Shelton v. Bledsoe*,
775 F.3d 554 (3d Cir. 2015)....................15

*Simon v. AT&T Corp.*,
2001 WL 34135273 ....................11, 12

*St. Louis Chiropractic v. Fed. Ins. Co.*,
2008 WL 4056225 (D.N.J. Aug. 26, 2008) ....................16

*Steimel v. Wernert*,
823 F.3d 902 (7th Cir. 2016) ....................7

*Taylor v. Cnty. of Oakland*,
2024 WL 188376 (E.D. Mich. Jan. 16, 2024)....................9

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)....................10

*Wal-Mart Stores, Inc., v. Dukes*,
564 U.S. 338 (2011)....................15

*Weisfeld v. Sun Chemical Corp.*,
84 F. App'x 257 (3d Cir. 2003) ....................12, 14

*White v. Williams*,
208 F.R.D. 123 (D.N.J. 2002)....................7

*Wilhoit v. Astrazeneca Pharms. LP*,
2024 WL 2843169 (D. Del. June 5, 2024)....................6

## INTRODUCTION

Plaintiffs' Amended Complaint fails to state a claim for a host of reasons, including those set forth in Defendant UPMC's Rule 12 motion. Separately, Fed. R. Civ. P. 23(d) requires striking class allegations where a complaint fails to demonstrate that the alleged class could be certified. *In re Railway Indus. Employee Antitrust Litig.*, 395 F. Supp. 3d 464, 498 (W.D. Pa. 2019) (striking proposed class under Rule 23(d)(1)(D) for failure to adequately plead a class claim). For three reasons, the Court should strike the class allegations from the Amended Complaint.

First, the class definition, on its face, is too "broad, amorphous, and vague," and cannot meet the ascertainability requirement of Rule 23. *Earnest v. GMC*, 923 F. Supp. 1469, 1473 (N.D. Ala. 1996); *see also* *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 233, 236 (W.D. Pa. 2001). Plaintiffs allege having worked as nurses, a surgical technologist, and a nursing student. Am. Compl. ¶¶ 16-20. But the class they seek to represent is defined not just by those diverse job titles; it also purports to include anyone who possesses "specialized in-patient hospital skills or qualifications" obtained as a result of either "formal education and training" or "extensive on-the-job training." *Id.* at 1 n.1. Plaintiffs—who must "define precisely whom the purported class will include"—never clarify those vague criteria or provide any guidance by which UPMC, the Court, or even putative class members could ascertain who is in or out of the class. *Mueller*, 200 F.R.D. at 236.

Second, Plaintiffs fail to plead how the proposed class could ever satisfy the predominance requirement of Rule 23(b)(3). Plaintiffs' obligation at the pleading stage is to allege that antitrust impact to the entire class can be linked to the purported Sherman Act violations through common, class-wide evidence. Fed. R. Civ. P. 23(b)(3); *see also* *In re Railway*, 395 F. Supp. 3d at 506 (striking class claim in a Section 1 wage-suppression case for failure to allege predominance). As the Amended Complaint demonstrates, there is far too much variation in the alleged relevant

markets for Plaintiffs to meet that standard here, and individualized issues necessarily will predominate in any question of antitrust impact.

Third, for the same reasons that the putative Rule 23(b)(3) class fails on the pleadings, Plaintiffs cannot seek certification under Rule 23(b)(2). The latter rule also requires a precise class definition, as well as "cohesiveness," a requirement similar to—but more "stringent" than—predominance. *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264, 269-70 (3d Cir. 2011). Moreover, Plaintiffs make virtually no effort to plead a cognizable claim for injunctive relief; they primarily seek monetary awards of compensatory damages to be calculated for each individual class member. That separately precludes certifying any Rule 23(b)(2) class.

Left unchecked, class allegations entail their own categories of burdensome fact discovery, necessitate additional experts, invariably proliferate discovery disputes and the need for pretrial rulings, and impose extra burdens on the parties and the Court. No party should have to bear these burdens and expenses when, for multiple reasons, the proposed class on its face cannot be certified.

## PLAINTIFFS' BACKGROUND ALLEGATIONS

### I. Plaintiffs Purport to Represent an Unspecified But Broad Class of Workers

Plaintiffs are five individuals who claim to have been employed at different UPMC locations at various times as either a Registered Nurse, Senior Practitioner Nursing Student, or senior surgical technologist. Am. Compl. ¶¶ 16-20. They seek to represent a class defined as:

> All *Skilled Healthcare Workers* who are or have been employed by UPMC at a UPMC affiliated facility providing primary, secondary, tertiary, and quaternary inpatient acute care hospital services (including predecessors, subsidiaries, and/or related entities of any such facility) in the *Relevant Market* at *any time from February 14, 1996* until UPMC's unlawful anticompetitive conduct ceases.
>
> Excluded from the proposed Class are UPMC, UPMC subsidiaries and affiliates, UPMC's boards of directors, UPMC senior executives

> who promulgated UPMC's anticompetitive employment practices, and governmental entities.

*Id.* ¶ 29 (emphases added).

Plaintiffs define "Skilled Healthcare Workers" to include all "licensed practical nurses (LPNs), Nurses, Medical Assistants, registered nurses (RNs), Nurse Assistants, Orderlies, and Pharmacy workers," but they do not limit the putative class to those job titles. *Id.* p. 1, n.1. The class definition also includes any worker (1) with "specialized in-patient hospital skills or qualifications" obtained (2) "as a result of either formal education and training or as the result of extensive on-the-job training." *Id.* Any worker, anywhere, with any title is potentially in the putative class, so long as they were employed at any UPMC hospital at any time since 1996 and acquired—through education or training—any "specialized in-patient hospital skill."

## II. The Proposed Class Is From Anywhere Within UPMC's Diverse Geographic Footprint, at Any Time Since 1996

The Amended Complaint defines "Relevant Market" as coinciding with UPMC's total U.S. geographic footprint for inpatient hospital services at the time of the Amended Complaint. Am. Compl. ¶¶ 5 n.3, 21 n.5, 67, 71. That area—crossing multiple states—is organized into six distinct "regions": Southwest Pennsylvania; Northwest Pennsylvania and New York; North Central Pennsylvania; West Central Pennsylvania; Central Pennsylvania; and Maryland and West Virginia. *Id.* ¶ 21 n.5. Plaintiffs depict the Relevant Market as follows (*see id.* ¶ 71):



Plaintiffs allege that UPMC gradually affiliated with different hospitals across the Relevant Market over a period of more than twenty years, resulting in different levels of hospital presence in various areas from 1996 to the present. *Id.* ¶¶ 71-90. Indeed, even today, Plaintiffs claim that UPMC's purported share of the provider market for inpatient services is under 30% across large swaths of the Relevant Market, while UPMC's alleged share of the provider market in discrete municipalities falls anywhere between 7% and 100%:




| Statistical Area | UPMC Market Share (2020) |
|---|---|
| New Castle | 100% |
| Oil City | 100% |
| Williamsport | 94% |
| Altoona | 89% |
| Lock Haven | 85% |
| Somerset | 56% |
| Pittsburgh | 55% |
| Erie | 54% |
| Harrisburg-Carlisle | 36% |
| York-Hanover | 17% |
| Lancaster | 7% |

*Id.* ¶¶ 73, 97.

Nevertheless, Plaintiffs' theory of liability is that UPMC's acquisitions made it the dominant hospital provider the moment it entered any region, giving it monopoly power as a seller of inpatient healthcare services wherever it has operated throughout the entire Relevant Market at all times since 1996. *Id.* ¶ 6. As a result, Plaintiffs assume, UPMC also simultaneously became the dominant employer of "Skilled Healthcare Workers," giving it monopsony power throughout the entire Relevant Market as a buyer of healthcare labor. *Id.* ¶¶ 71-72.

## III. The Proposed Class Allegedly Suffered Varying Forms of Antitrust Impact, for Which Putative Class Members Seek Individualized Compensatory Damages

In alleging their case on a class basis, Plaintiffs claim that one purportedly common question is "[w]hether Plaintiffs and the Class have suffered antitrust injury." *Id.* ¶ 32. Plaintiffs'

theory is that so-called Skilled Healthcare Workers purportedly incurred "antitrust injury" because UPMC exercised its alleged monopsonist power in three anticompetitive ways.

First, Plaintiffs claim that UPMC's 28-year history of affiliating with other hospitals was "anticompetitive." *Id.* ¶ 70. But they allege only that these affiliations affected local labor markets through purported downsizing or closures in five specific locations, all in Pennsylvania: Lancaster (alleged inpatient market share of 7%); Sunbury (alleged inpatient market share under 20%); Pittsburgh (alleged inpatient market share of 55%); Lock Haven (alleged inpatient market share of 85%); and Bedford (alleged inpatient market share 80-90%). *Id.* ¶ 77, 84-87, 90, 97.

Second, Plaintiffs claim that UPMC used its alleged monopsonist power over labor to suppress putative class members' wages, both in dollar terms and by increasing workloads through decreased staffing ratios without an offsetting salary change. *Id.* ¶ 1. But according to the pleadings, UPMC utilizes a "market-based approach to" salaries centered around its six different regions, and each region—such as Southwest Pennsylvania—has its own "market targets" "based on market data in defined geographical areas." *Id.* ¶ 142. Plaintiffs likewise allege that average staffing ratios vary by location. *Id.* ¶ 10.

Third, the five named Plaintiffs—at least three of whom left UPMC to work for other employers—claim UPMC imposes a "draconian system of mobility restrictions" to restrict Plaintiffs from leaving employment with UPMC entities. *Id.* ¶ 1; *see also id.* ¶¶ 16-20 (alleging that at least three of five Plaintiffs no longer work at UPMC). These restrictions include an alleged "do-not-rehire blacklist policy" that "functions as a non-compete clause," and providing employee benefits in the form of a voluntary tuition assistance program that is repayable if a worker chooses to leave within a certain period. *Id.* ¶¶ 7, 153-54.

Purporting to seek class relief pursuant to both Rule 23(b)(2) and Rule 23(b)(3), Plaintiffs seek "to recover damages" and "restitution or disgorgement," all trebled under the Sherman Act. *Id.* ¶ 189. They separately request that UPMC "be permanently enjoined and restrained from continuing and maintaining the monopolies and unfair business practices" alleged. *Id.* ¶ 190.

## LEGAL STANDARD

Class actions are the "'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *In re Railway*, 395 F. Supp. 3d at 498 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). To proceed on a class basis, the named plaintiffs must satisfy the Third Circuit's standard for ascertainability, as well as all the elements of Rule 23(a) and the elements of either Rule 23(b)(2) or Rule 23(b)(3). *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

Courts strike class claims at the pleading stage where the pleadings do not allege those required elements. *See, e.g.*, *In re Railway*, 395 F. Supp. 3d at 495-98. "[P]laintiffs have the burden to allege sufficient facts" in the complaint "to make a prima facie showing that the requirements of Rule 23 are satisfied or that at least discovery is likely to produce substantiation of the class allegations." *Id.* at 497-98; *see also Wilhoit v. Astrazeneca Pharms. LP*, 2024 WL 2843169, at *6 (D. Del. June 5, 2024) (striking class claims where the allegations failed to show that "common questions predominate over all members of [the] proposed class"); *Loduca v. Wellpet LLC*, 2022 WL 2304308, at *2 (E.D. Pa. June 27, 2022) (a plaintiff "is not entitled to conduct discovery" when the complaint fails to plead a prima facie case for certification). When a complaint fails to meet that pleading burden, courts "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D); *In re Railway*, 395 F. Supp. 3d at 498.

## ARGUMENT

### I. The Alleged Class Definition Is Far Too Vague, Amorphous, and Imprecise

"Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled" to any applicable notice. *In re Railway*, 395 F. Supp. 3d at 498 (quoting Manual for Complex Litigation (Fourth) § 21.222). Class definitions must, therefore, be "readily discernible, clear, and precise," and class membership "currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591, 593 (3d Cir. 2012). A "proposed class [that is] amorphous, vague, or indeterminate" cannot be certified. *Mueller*, 200 F.R.D. at 231; *see also White v. Williams*, 208 F.R.D. 123, 129 (D.N.J. 2002) (declining to certify a proposed class of "[a]ll persons of color … stopped … on the New Jersey Turnpike" for having "nearly no parameters").

Use of vague or undefined terms in a class definition fails this requirement of precision. In *In re Copper Antitrust Litigation*, for example, the court refused to certify a proposed Sherman Act class defined with reference to prices "expressly related" to certain futures exchanges. 196 F.R.D. 348 (W.D. Wis. 2000). That undefined term provided putative class members with no guidance on whether their purchases fell within the class parameters. *Id.* at 358. In *Earnest v. GMC*, the court struck class claims on the pleadings where the class was defined to include "vehicle[s] such as plaintiffs'." 923 F. Supp. at 1473 (cleaned up). Courts likewise refused to certify putative classes defined with vague criteria concerning, for instance, the quality of members' educational experiences, *Blunt v. Lower Merion Sch. Dist.*, 262 F.R.D. 481, 488 (E.D. Pa.); "recreational" fishing and proximity to "nearby" contamination sites, *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 663, 684 (S.D. Ala. 2005); "mentally ill" prisoners, *Fluellen v. Wetherington*, 2003 U.S. Dist. LEXIS 21712, at *32 (N.D. Ga. Mar. 21, 2003), and what level of services putative members "require[d]," *Steimel v. Wernert*, 823 F.3d 902, 917-918 (7th Cir. 2016).

Plaintiffs' proposed class definition suffers from the same flaw. The class purports to encompass all "Skilled Healthcare Workers," but predicates the term on vague, amorphous criteria that provide no guidance to enable UPMC, the Court, or putative class members to identify who might be in the class. Those criteria include who has "specialized in-patient hospital skills or qualifications"; whether those skills were obtained through either "education and training"; and whether that education was "formal" or that training "extensive." Am. Compl. at 1 n.1 (defining "Skilled Healthcare Workers"); *see also id.* ¶ 29 (defining the putative class). The pleadings provide zero guidance on what those terms mean or how they should be applied, and make it "virtually impossible to determine membership in the class." *Earnest*, 923 F. Supp. at 1473. A class definition that "could potentially mean anything the plaintiffs want it to mean at any particular time" does not "meet the minimum standard of definiteness," and should be stricken at the outset. *Id.* at 1473-74 (striking class claims).

The exemplar job titles Plaintiffs do identify only highlight the problem. Plaintiffs claim "Skilled Healthcare Workers" includes—"without limitation"—"licensed practical nurses (LPNs), Nurses, Medical Assistants, registered nurses (RNs), Nurse Assistants, Orderlies, and Pharmacy workers." Am. Compl. at 1 n.1. But they never allege why each of these jobs has "specialized *in-patient* hospital skills," as opposed to other types of patient care; what those skills are for each title; or how the specialized skills of a Registered Nurse are comparable to those of, for example, an Orderly. Moreover, the job titles that Plaintiffs specify only partially overlap with the Plaintiffs themselves, who also include a "Senior Practitioner Nursing Student" and a "senior surgical technologist." *Id.* ¶¶ 17-18. Adding into the class definition "a virtual laundry list" of titles that have no clear underlying relationship to each other, that "by [their] own terms, do[] not even include all" of the named Plaintiffs' job titles, and that include several titles none of the named

Plaintiffs allegedly held, only illustrates how vague and undefined the putative class is. *Fluellen*, 2003 U.S. Dist. LEXIS 21712, at *31; *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir. 1994) (putative class of those "similarly situated" to the named plaintiff failed for lack of "guidance as to how the class is to be defined and identified").

Plaintiffs also fail to allege how the class definition could be applied without necessarily having to review the personnel information and professional history of each potential class member. That separately prohibits even moving into discovery on the proposed class. Where class membership cannot be confirmed "without extensive and individualized fact-finding or mini-trials," then the "essential prerequisite" of ascertainability precludes certification under Rule 23(b)(3). *Marcus*, 687 F.3d at 592-93. Thus, a class defined to include purchasers of roof shingles that had "degranulate[ed] … or deterioration" failed for lack of ascertainability because those conditions required "individual examination and subjective assessment of each potential class member's shingles." *Gonzalez v. Corning*, 317 F.R.D. 443, 507 (W.D. Pa. 2016). Similarly, a proposed class comprising homeowners overcharged for insurance could not be certified where "in-depth analysis of individual files" was required to assess who was overcharged. *Coleman v. Commw. Land Title Ins. Co.*, 318 F.R.D. 275, 292 (E.D. Pa. 2016).

This deficiency independently warrants striking the class allegations. Whether any given individual has "specialized … skills," whether those skills are specific to "in-patient" services and were obtained through "education or training," and the nature of that education or training cannot be assessed in any generally applicable way, but instead require assessing the background of each individual worker—a "file-by-file" process that defeats the entire purpose of proceeding on a class basis. *Id.*; *see also* *Taylor v. Cnty. of Oakland*, 2024 WL 188376, *6-7 (E.D. Mich. Jan. 16, 2024) (striking class allegations that would involve considering individual property values); *Center City*

*Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 214 (E.D. Pa. 2017) (class not ascertainable when it required examining each member's water source); *Kline v. Sec. Guards, Inc.*, 196 F.R.D. 261, 266, 268 (E.D. Pa. 2000) (no ascertainability where it was "impossible to definitively identify class members prior to individualized fact-finding and litigation"). For that reason as well, the Court should strike the class claims.

## II. As Alleged, the Putative Class Cannot Satisfy Rule 23(b)(3)'s Predominance Requirement

The predominance requirement in Rule 23(b)(3) independently warrants striking the class claims. This is "distinct from the separate requirement" of ascertainability, *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 184 (3d Cir. 2014), and requires that Plaintiffs plead how "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). An "individual question is one where members of a proposed class will need to present evidence that varies from member to member" on an element of the claim. *In re Railway*, 395 F. Supp. 3d at 504-05 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Plaintiffs cannot survive a pleadings-based challenge to class claims with "conclusory allegations that … common issues in this case will predominate." *Id*. at 472.

The predominance requirement regularly precludes class certification in antitrust cases. Such claims require pleading and proving, *inter alia*, "individual injury resulting from [the alleged Sherman Act] violation," an element "also known as antitrust impact." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008). This element is separate from any question about actual damages and instead concerns whether claimants suffered "injury of the type the antitrust laws were intended to prevent" and caused by the allegedly unlawful conduct. *In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*, 2013 WL 1145540, at *4 (D.N.J. Mar, 18, 2013) (citation omitted).

Antitrust impact is "critically important for … evaluating Rule 23(b)(3)'s predominance requirement," because it is an element "that may call for individual, as opposed to common, proof." *Hydrogen Peroxide*, 552 F.3d at 311. Claims of statistical wage differentials are irrelevant where wage-suppression claimants lack common, class-wide proof linking the differential to an antitrust violation. *See, e.g.*, *Maderazo v. VHS San Antonio Partners, L.P.*, 2019 WL 4254633, at *7-9 (W.D. Tex. Jan. 22, 2019) (declining to certify a class of registered nurses for lack of predominance); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 591 (N.D. Ill. 2009) (denying certification in part because "[m]easuring average base wage suppression does not indicate whether each putative class member suffered harm from the alleged conspiracy"). Thus, Plaintiffs' burden at the pleading stage is to "set forth sufficient factual allegations to advance a prima facie showing that antitrust impact is capable of proof on a class-wide basis for [the proposed class] or that at the least discovery is likely to produce evidence to substantiate plaintiffs' conclusory allegations with respect to predominance." *In re Railway*, 395 F. Supp. 3d at 506.

Plaintiffs do not plead how class-wide proof could establish any nexus between UPMC's purported anticompetitive conduct and the alleged wage suppression. Nor can they do so for the class alleged here. To illustrate, start with the claim that UPMC wields market power in the Relevant Market. *See* Am. Compl. ¶¶ 71-72. Variation across the alleged market precludes class-wide proof of antitrust impact, because "different market dynamics [and] differences in the market power" require too much individualized inquiry. *Columbia Health Svcs. of El Paso, Inc. v. Columbia/HCA Healthcare Corp.*, 1996 WL 812934, at *3 (W.D. Tex. Dec. 23, 1996); *see also* *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 328 (5th Cir. 1978) (plaintiffs cannot prove impact through common proof when the court must "examin[e] the relevant … market where each individual plaintiff is located"); *Simon v. AT&T Corp.*, 2001 WL 34135273, at *9 (C.D. Cal. Jan.

29, 2001 (no predominance due to the need for "localized examination of pricing and market conditions").

Even overlooking Plaintiffs' flawed assumption that provider-side monopoly power equals buyer-side monopsony power, the pleadings show a staggering diversity of local market share throughout the Relevant Market. UPMC's alleged presence as a provider ranges from 0% to 100%—including shares in metropolitan areas like Lancaster and York-Hanover that are under 20%. Am. Compl. ¶¶ 73, 97. Plaintiffs cannot use proof common to the entire class to link purported wage suppression in the Relevant Market with alleged monopsony power when their own pleading concedes that UPMC's presence, wages, and claimed power to restrain employee mobility vary from location to location based on local competition conditions. *Id.* ¶ 127 (claiming that, as UPMC's "market share" for hospital services increases, wages at UPMC facilities decrease relative to hospitals in other markets); *see also* *Simon*, 2001 WL 34135273, at *9; *Columbia Health Svcs.*, 1996 WL 812934, at *3.

Excessive diversity in class membership likewise introduces too much market variation for there to be common proof of antitrust impact. In *Weisfeld v. Sun Chemical Corp.*, plaintiff alleged that defendants had agreed to suppress wages and eliminate job opportunities through collusive "'no hire' policies." 84 F. App'x 257, 259 (3d Cir. 2003). The putative class definition included "individuals employed in positions that vary widely in terms of skill requirements and responsibilities," *id.* at 263, which precluded any finding that common issues would predominate:

> [B]oth the decreased salary and deprivation of opportunities inquiries would require considering numerous individual factors. These include: "whether a covenant not to compete was included in a particular employee's contract; the employee's salary history, educational and other qualifications; the employer's place of business; the employee's willingness to relocate to a distant competitor; and [employees'] ability to seek employment in other

> industries in which their skills could be utilized (e.g., pharmaceuticals, cosmetics).

*Id.* at 263-64 (citation omitted). Similarly, the court in *In re Comp. of Managerial, Prof'l, & Tech. Employees Antitrust Litig.*, denied certification of a class of "Managerial, Professional, and Technical" employees alleging unlawful restraints in the petrochemical industry, because the relevant market would vary too much "depending on an employee's position." 2003 WL 26115698, at *3 (D.N.J. May 27, 2003). Different types of jobs necessarily present variations in the alleged market for employees and give rise to unique questions about each putative class member's education, training, skills, employment history, employment opportunities, and other individual circumstances. "The relevant job market for an attorney," for example, "will differ from that of an accountant or a geologist or project engineer…." *Id.*

So too in this case. Plaintiffs purport to represent a class encompassing a diverse range of job categories, from Orderlies (a role defined by the U.S. Bureau of Labor Statistics as "transport[ing] patients and clean[ing] treatment areas") to Registered Nurses (who "provide and coordinate patient care and educate patients and the public about various health conditions").[1] Am. Compl. at 1 n.1. But Plaintiffs make no attempt to plead how proof common to all of those job categories will demonstrate the full range of employers with which UPMC allegedly is competing for each different job category, UPMC's share of the market for workers in each different category, and what alternative employment opportunities—in healthcare or otherwise—are available to individuals in each different category.

Plaintiffs compound the need for individualized inquiry by seeking to represent a class for all time since 1996, and across the entire alleged "Relevant Market." Am. Compl. ¶ 22. Even for

---

[1] Definitions quoted from the Bureau of Labor Statistics' Occupational Outlook Handbook, available online at https://www.bls.gov/ooh/ (search "orderly" and "registered nurse").

a single job category like Registered Nurse, there is no way (and Plaintiffs do not allege a way) to prove through common, class-wide evidence the purported degree of restraints on, for example: (1) a Pittsburgh-based Registered Nurse in 1996, when UPMC allegedly had only two hospitals in that area, Am. Compl. ¶ 75; (2) the same nurse in 2019, when two different integrated healthcare delivery systems were well-established in Allegheny County, *id*. ¶¶ 112, 166; and (3) any nurse anywhere in 2020-21, when a worldwide pandemic drastically altered the entire healthcare market. *See Conrad v. Jimmy John's Franchise, LLC*, 2021 WL 3268339, at *9 (S.D. Ill. July 23, 2021) (holding that "overwhelming individualized inquiries" precluded any finding of predominance in a Section 1 wage-suppression case involving no-poaching agreements that varied over time).

Nor can common proof connect UPMC's other allegedly anticompetitive conduct—purported rehiring blacklists and tuition assistance benefits—to antitrust impact on the entire class. The presence of any perceived mobility restrictions from blacklists or voluntary tuition benefits can only be assessed person-by-person—the same type of individualized inquiry that helped preclude certification in *Weisfeld* concerning whether a "covenant not to compete was included in a particular employee's contract." 84 F. App'x at 264. There is no allegation that *all* putative class members are subject to any tuition assistance agreement, and Plaintiffs' own circumstances—with at least three of the five having left UPMC, *see* Am. Compl. ¶¶ 17-19—demonstrate that the extent to which any putative class subjectively member feels restrained from seeking alternative employment necessarily will be an individualized inquiry. Plaintiffs do not plead any plausible way to establish through proof common to the entire class whether alleged policies like tuition assistance and rehiring blacklists force any given class member to incur allegedly suppressed wages at UPMC. *See Weisfeld*, 84 F. App'x at 264. The alleged Rule 23(b)(3) class cannot be certified for lack of predominance, and the Court should therefore strike the class allegations.

**III. As a Matter of Law, Plaintiff Cannot Pursue Any Class Claim Under Rule 23(b)(2)**

For three independent reasons, the Amended Complaint also cannot plead a class claim under Rule 23(b)(2).

First, plaintiffs invoking Rule 23(b)(2) must still plead and prove that the putative class is "capable of … description by a readily discernible, clear, and precise statement of the parameters defining the class." *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) (marks and citation omitted). "Nebulous" class definitions that require too much individualized inquiry just to confirm membership in the class fail under this requirement. *Robb v. Lock Haven Univ. of Pa.*, 2019 WL 2005636, at *12 (M.D. Pa. May 7, 2019). The vagueness of Plaintiffs' alleged class precludes certification under either Rule 23(b)(2) or Rule 23(b)(3), as set forth above.

Second, Plaintiffs seeking to represent a Rule 23(b)(2) class must also plead and prove "cohesiveness," a requirement that is similar to—but more "stringent" than—predominance. *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264, 269-70 (3d Cir. 2011); *see also* *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998) (holding that class claims under Rule 23(b)(2) "must be cohesive"). As set forth above, the class alleged here fails under Rule 23(b)(3) for lack of predominance, and so, *a fortiori*, fails Rule 23(b)(2) for lack of cohesiveness as well. *Huber v. Taylor*, 2011 WL 4553154, at *2 (W.D. Pa. Sept. 29, 2011) (rejecting certification for lack of cohesiveness and predominance).

Third, monetary damages are—by a wide margin—the primary relief sought here, which separately bars any Rule 23(b)(2) class as a matter of law. Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages," *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 360-61 (2011), or when the relief sought "relates … predominantly to money damages," *Hohider v. UPS*, 574 F.3d 169, 198 (3d Cir. 2009) (quoting advisory committee notes); *see also* *Barnes*, 161 F.3d at 142 ("Subsection (b)(2) class

actions are 'limited to those class actions seeking *primarily* injunctive or corresponding declaratory relief.'" (emphasis added; citation omitted)).

Courts regularly decline to certify putative Rule 23(b)(2) classes seeking treble damages for alleged Sherman Act violations because "the primary relief [plaintiffs] seek" in such cases "is without a doubt monetary," whether or not the plaintiffs also seek injunctive relief. *In re Google Play Store Antitrust Litig.*, 2022 WL 17252587, at *15 (N.D. Cal. Nov. 28, 2022).[2] And, where it is plain enough from the complaint that a putative class "predominantly" seeks money damages, courts strike Rule 23(b)(2) claims at the pleading stage. *See, e.g.*, *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 369 (D.N.J. 2015); *Semenko v. Wendy's Int'l, Inc.*, 2013 WL 1568407, at *10 (W.D. Pa. Apr. 12, 2013); *St. Louis Chiropractic v. Fed. Ins. Co.*, 2008 WL 4056225, at *6 (D.N.J. Aug. 26, 2008).

There is no credible dispute that the Amended Complaint primarily seeks monetary damages. Plaintiffs are essentially asking for individualized back pay awards to compensate them for allegedly suppressed wages over a nearly three-decade period—and also for the trebling of those awards pursuant to the Sherman Act. Am. Compl. ¶ 189. They purport to describe in detail their claims of alleged pay differentials in support of that request. *Id.* ¶¶ 117-38. In contrast, the Amended Complaint makes virtually no effort to develop any request for injunctive relief beyond asking the Court to enjoin UPMC from "maintaining the monopolies and unfair business practices alleged herein"—the type of "follow-the-law" injunction that typically fails as a matter of law. *Id.*

[2] *See also, e.g.*, *In re Fla. Cement & Concrete Antitrust Litig.*, 278 F.R.D. 674, 682 (S.D. Fla. 2012) (similar); *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 27 (D.D.C. 2012) (rejecting 23(b)(2) class where "money damages are at the heart of this case"); *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *7 (N.D. Cal. June 9, 2010) (holding certification under Rule 23(b)(2) to be "inappropriate in light of the fact that Plaintiffs' primary intent in this litigation is to recover damages for past purchases").

¶ 190; *see also In re Insulin Pricing Litig.*, 2024 WL 416500, at *25 (D.N.J. Feb. 5, 2024) ("Plaintiffs' sought injunction must be more specific than merely requiring that Defendants follow the law." (citation omitted)).

**CONCLUSION**

For the foregoing reasons, UPMC respectfully requests that the Court strike all class allegations in the Amended Complaint.

Dated: July 22, 2024

Respectfully submitted,

/s/ *Rebekah B. Kcehowski*

Rebekah B. Kcehowski (PA ID No. 90219)
Anderson T. Bailey (PA ID No. 206485)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone: 412.391.3939
Fax: 412.394.7959
rbkcehowski@jonesday.com
atbailey@jonesday.com

David C. Kiernan (admitted pro hac vice)
JONES DAY
555 California St., 26th Fl.
San Francisco, CA 94104
Telephone: 415.626.3939
Fax: 415.875.5700
dkiernan@jonesday.com

Peter Schwingler (admitted pro hac vice)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Telephone: 612.217.8866
Fax: 844.345.3178
pschwingler@jonesday.com

*Counsel for Defendant UPMC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of July, 2024, a true and correct copy of this Brief in Support of Defendant's Motion to Strike Class Allegations Pursuant to Federal Rule of Civil Procedure 23 was filed and served on counsel of record via the United States District Court for the Western District of Pennsylvania's CM/ECF system.

/s/ *Rebekah B. Kcehowski*
Rebekah B. Kcehowski
(PA ID No. 90219)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone: 412.391.3939
Fax: 412.394.7959
rbkcehowski@jonesday.com