**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JENNIFER MIZELL, MARIA PAULDING, KATHLEEN PEAPPLES, VICTORIA ROSS, and NATHAN SIMPSON, individually and on behalf of those similarly situated,** | **Civil Action No. 1:24-cv-00016-SPB** |
| **Plaintiffs,** | **Electronically Filed** |
| **v.** | |
| **THE UNIVERSITY OF PITTSBURGH MEDICAL CENTER,** | **Oral Argument Requested** |
| **Defendant.** | |

# REPLY IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23

David C. Kiernan (admitted pro hac vice)
JONES DAY
555 California St., 26th Fl.
San Francisco, CA 94104
Telephone: 415.626.3939
Fax: 415.875.5700
dkiernan@jonesday.com

Peter Schwingler (admitted pro hac vice)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Telephone: 612.217.8866
Fax: 844.345.3178
pschwingler@jonesday.com

Rebekah B. Kcehowski (PA ID No. 90219)
Anderson T. Bailey (PA ID No. 206485)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone: 412.391.3939
Fax: 412.394.7959
rbkcehowski@jonesday.com
atbailey@jonesday.com

*Counsel for Defendant UPMC*

# TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. UPMC's Motion to Strike Is Timely ..... 1

II. Plaintiffs Do Not Defend Their Vague Class Definition ..... 3

III. Plaintiffs Fail to Show How the Complaint Pleads Predominance ..... 5

IV. Plaintiffs Do Not Dispute That They Predominantly Seek Monetary Damages ..... 8

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Atwell v. Gabow*,
248 F.R.D. 588 (D. Colo. 2008) ....................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................2

*Bell v. Cheswick Gen. Station*,
2015 WL 401443 (W.D. Pa. Jan. 28, 2015)....................2

*Bellin v. Zucker*,
2022 WL 4592581 (S.D.N.Y. Sept. 30, 2022)....................4

*Cook Cnty. Coll. Tchrs. Union v. Byrd*,
456 F.2d 882 (7th Cir. 1972) ....................2

*Dieter v. Aldi, Inc.*,
2018 WL 6191586 (W.D. Pa. Nov. 28, 2018) ....................3

*Earnest v. Gen. Motors Corp.*,
923 F. Supp. 1469 (N.D. Ala. 1996)....................4, 5

*Gates v. Rohm & Haas Co.*,
655 F.3d 255 (3d Cir. 2011)....................10

*Hawkins v. Alorica, Inc.*,
287 F.R.D. 431 (S.D. Ind. 2012)....................10

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013)....................3

*In re Copper Antitrust Litig.*,
196 F.R.D. 348 (W.D. Wis. 2000)....................4

*In re FCA LLC Litig.*,
334 F.R.D. 96 (E.D. Mich. 2019) ....................9

*In re High-Tech Emp. Antitrust Litig.*,
289 F.R.D. 555 (N.D. Cal. 2013)....................7

*In re High-Tech Emp. Antitrust Litig.*,
985 F. Supp. 2d 1167 (N.D. Cal. 2013) ....................7

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008)....................6

*In re Processed Egg Prod. Antitrust Litig.*,
312 F.R.D. 124 (E.D. Pa. 2015)....................10

*In re Processed Egg Prod. Antitrust Litig.*,
321 F.R.D. 555 (E.D. Pa. 2017)....................10

*In re Railway Indus. Emp. No-Poach Antitrust Litig.*,
395 F. Supp. 3d 464 (W.D. Pa. 2019)....................2, 3, 5, 6

*In re Suboxone Antitrust Litig.*,
967 F.3d 264 (3d Cir. 2020)....................6

*In re Thalomid & Revlimid Antitrust Litig.*,
2018 WL 6573118 (D.N.J. Oct. 30, 2018)....................10

*Jaraczewski v. Equity National Title & Closing Services*,
2024 WL 3861248 (W.D. Pa. Aug. 19, 2024) ....................2, 10

*John v. Nat'l Sec. Fire & Cas. Co.*,
501 F.3d 443 (5th Cir. 2007) ....................2

*Jones v. Lubrizol Advanced Materials, Inc.*,
583 F. Supp. 3d 1045 (N.D. Ohio 2022)....................9

*Landsman Funk PC v. Skinder-Strauss Associates*,
640 F.3d 72 (3d Cir. 2011)....................2

*Mantolete v. Bolger*,
767 F.2d 1416 (9th Cir. 1985) ....................2

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012)....................6

*McManus v. Fleetwood Enters.*,
320 F.3d 545 (5th Cir. 2003) ....................9

*Miller v. Grand Canyon Univ., Inc.*,
540 F. Supp. 3d 625 (N.D. Tex. 2021) ....................10

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015)....................6

*Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943 (6th Cir. 2011) ....................2

*Reed v. Advocate Health Care*,
268 F.R.D. 573 (N.D. Ill. 2009)....................8

*Sambrano v. United Airlines*,
347 F.R.D. 155 (N.D. Tex. 2024) ....................10

*Schmidt Loduca v. WellPet LLC*,
2022 WL 2304308 (E.D. Pa. June 27, 2022) ....................3

*Semenko v. Wendy's Int'l, Inc.*,
2013 WL 1568407 (W.D. Pa. Apr. 12, 2013)....................2, 9

*Shamblin v. Obama*,
2015 WL 1909765 (M.D. Fla. Apr. 27, 2015) ....................9

*Trunzo v. Citi Mortg.*,
2014 WL 1317577 (W.D. Pa. Mar. 31, 2014) ....................2

*Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*,
453 F.3d 179 (3d Cir. 2006)....................10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................8, 9

*Wang v. Tesla*,
338 F.R.D. 428 (E.D.N.Y. 2021) ....................4, 5

*Weisfeld v. Sun Chemical Corp.*,
84 F. App'x 257 (3d Cir. 2003) ....................7

**RULES**

Fed. R. Civ. P. 23 .................... passim

**OTHER AUTHORITIES**

E. Prager & M. Schmitt, *Employer Consolidation and Wages, Evidence from Hospitals* ....................4

## INTRODUCTION

There is no free ride into class discovery. Before Plaintiffs can invoke the extraordinary procedures (and additional burdens) of a putative class action, they must adequately plead the requirements of Rule 23. On its face, the Amended Complaint fails to meet that pleading burden: (a) the parameters of the ill-defined class improperly depend on vague terms left to the reader's imagination; (b) by a wide margin, individualized considerations will predominate in any analysis of antitrust impact; and (c) Plaintiffs' undisputed focus on monetary relief bars a Rule 23(b)(2) injunction class.

Plaintiffs' response is first to ask that the Court turn a blind eye to these issues, arguing they are "premature." But of course, the *pleading* stage is the right time to challenge whether Plaintiffs met their *pleading* burden—a burden Plaintiffs ultimately agree is theirs. Plaintiffs then ignore both the plain language of their class allegations and the voluminous caselaw substantiating why the Court should strike those allegations. The Court should not green-light class discovery when Plaintiffs cannot defend their own alleged class definition or distinguish the adverse pleading-stage precedents.

## ARGUMENT

### I. UPMC's Motion to Strike Is Timely

Plaintiffs' initial argument—that the Court should deny UPMC's motion "without addressing the merits" of the actual arguments because they are "premature"—ignores the text of Rule 23 and ample case precedent. It is undisputed that the Court can "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). And for decades, courts have recognized that "the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation

of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).[1] Courts in this District—including the comprehensive antitrust analysis in *In re Railway*, which the Opposition never acknowledges—follow that standard: Class allegations should be struck where "plaintiffs d[o] not make [that] prima facie showing" in their complaint. 395 F. Supp. 3d 464, 516 (W.D. Pa. 2019); *accord Bell v. Cheswick Gen. Station*, 2015 WL 401443, at *7 (W.D. Pa. Jan. 28, 2015); *Semenko v. Wendy's Int'l, Inc.*, 2013 WL 1568407, at *11 (W.D. Pa. Apr. 12, 2013).

But ultimately, Plaintiffs' own arguments concede the point. The Opposition admits that *Plaintiffs* have the burden to "plausibly allege[] facts advancing a prima facie showing of the elements of Rule 23." Opp. at 6. Their legal authority also corroborates that the adequacy of class allegations should be assessed on the pleadings. Plaintiffs cite *Trunzo v. Citi Mortgage*, Opp. at 7 n.5, for example, but Judge Hornak's earlier decision in that case granted a motion to strike the class allegations on the pleadings, including for lack of predominance. 2014 WL 1317577, at *5–6 (W.D. Pa. Mar. 31, 2014). Plaintiffs also cite this Court's decision in *Jaraczewski v. Equity National Title & Closing Services*, but there, the Court concluded that Rule 23 was "reasonably satisfied … at the pleading stage," not that it was premature to decide the adequacy of class allegations at the pleading stage. 2024 WL 3861248, at *7 (W.D. Pa. Aug. 19, 2024). Whether an alleged class definition satisfies the *pleading* requirements of Rule 23 can and should be decided at the pleading stage—before opening up the "unusually high cost of discovery in antitrust cases" alleging class claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citation omitted).[2]

---

[1] *See also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming dismissal of class allegations); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (same); *Cook Cnty. Coll. Tchrs. Union v. Byrd*, 456 F.2d 882, 885–86 (7th Cir. 1972) (same).

[2] Both Plaintiffs here, and this Court in *Jaraczewski*, cite *Landsman Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72 (3d Cir. 2011). *Landsman* recognized that there are cases where "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met," *id.* at 93 n.30, and authorizes a court to strike class allegations at the pleading stage. *See*

For similar reasons, Plaintiffs are wrong to argue that UPMC has the burden to produce some "evidentiary record" showing that certification would be a "clear impossibility." Opp. at 7 (quoting *Dieter v. Aldi, Inc.*, 2018 WL 6191586, at *6 (W.D. Pa. Nov. 28, 2018)). To the contrary, Judge Conti's *Dieter* decision explained that, on a motion to strike, "the *plaintiff* has the burden to prove that the requirements set forth in Rule 23" are adequately alleged. *Id.* at *3 (emphasis added). And a year later, it was Judge Conti who re-confirmed in *In re Railway* that "plaintiffs have the burden to allege sufficient facts … to make a prima facie showing." 395 F. Supp. 3d at 498. Plaintiffs' position would render this pleading burden a nullity and permit class-wide discovery based on conclusory invocations of Rule 23. That is not, and should not be, the law.

## II. Plaintiffs Do Not Defend Their Vague Class Definition

Plaintiffs do not contest that their pleading burden includes defining a putative class "with reference to objective criteria" composed of members who are identifiable by "a reliable and administratively feasible mechanism." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013). Yet, the alleged class comprises not just generic job categories like "nurse" or "orderly," but also any worker who meets vague criteria about which the parties, the Court, and putative class members can only guess. These include whether someone has "specialized in-patient hospital skills or qualifications," whether those skills were obtained through "education and training," and whether that education was "formal," or that training "extensive." Am. Compl. at 1 n.1.

Plaintiffs never defend these fuzzy aspects of their class definition. Instead, they assert in conclusory fashion that the class definition is "based on objective criteria such as specific job titles," Opp. at 11, but that ignores the broader language of their own Complaint. To be sure, that

---

*Schmidt Loduca v. WellPet LLC*, 2022 WL 2304308, at *2 (E.D. Pa. June 27, 2022) (citing *Landsman* and striking class claims); *In re Railway*, 395 F. Supp. 3d at 497 (same).

definition references certain categories of jobs, but it also includes "without limitation" *any* employee in *any* position who fits undefined criteria of "specialized" "in-patient" skills, and "extensive," "formal" training or education. Am. Compl. at 1 n.1. Such "subjective criteria" require UPMC, the Court, and/or workers themselves to define vague concepts, and are not "sufficiently definite or ascertainable to likely achieve certification." *Wang v. Tesla*, 338 F.R.D. 428, 440 (E.D.N.Y. 2021) (rejecting class definition at the pleading stage based on terms like "hazard" and "imminent"). Plaintiffs do not and cannot argue that the actual class definition alleged here meets the pleading requirements of Rule 23. Nor do they distinguish the cases that reject class claims for this reason, noting only that if this Court follows suit, dismissal should be "without prejudice"—tacit acknowledgment of the deficiencies with the class definition as it is pleaded. Opp. at 12.[3]

Plaintiffs cite two "academic research" articles that purport to group healthcare workers similarly to the putative class alleged here. Opp. at 11 (citing Am. Compl. ¶¶ 52, 123–26). Academic researchers are not subject to the requirements of Rule 23. In any event, these articles only highlight the pleading deficiency in this case. One analyzes data related to "skilled health care professionals," but applies that term in a limited way to include *only* "nursing and pharmacy workers."[4] The other similarly examines only "specific job titles." Opp. at 11; *see also* Am.

[3] *See, e.g.*, *Earnest v. Gen. Motors Corp.*, 923 F. Supp. 1469, 1473–74 (N.D. Ala. 1996) (striking class definition encompassing "vehicle[s] such as plaintiffs'"); *In re Copper Antitrust Litig.*, 196 F.R.D. 348, 358 (W.D. Wis. 2000) (rejecting class based on undefined terms like "copper or metal dealers"); *see also Bellin v. Zucker*, 2022 WL 4592581, at *5 (S.D.N.Y. Sept. 30, 2022) (class definition failed Rule 23 where it relied on the undefined term "adequate"); *Wang*, 338 F.R.D. at 440; UPMC Br. at 7 (citing additional cases).

[4] E. Prager & M. Schmitt, *Employer Consolidation and Wages, Evidence from Hospitals*, 111 Am. Econ. Rev. 397, 398 (2021). Plaintiffs allege that this article focused on wages of "medically skilled workers," but that undefined term is one of Plaintiffs' own invention; the article itself never uses the term. Am. Compl. ¶ 52.

Compl. ¶¶ 123–26. The problem here is that Plaintiffs' putative class is, by its terms, not limited to concrete, easily applied parameters, or even to those "specific job titles." Rather, it sweeps broader based on vague criteria like *specialized* skills, *formal* education, and *extensive* training. Am. Compl. at 1 n.1. That is what make this "the kind of imprecise class" that fails Rule 23. *Wang*, 338 F.R.D. at 440 (rejecting class definition on the pleadings). Indeed, no objective criteria are alleged for an individual to evaluate whether she is in or out of the putative class.

Despite well over a decade of collective experience at UPMC, Plaintiffs also identify no way in which discovery could cure this pleading defect. Their argument that UPMC's "employment records" would identify "the class by job title," Opp. at 14, still begs the questions that Plaintiffs ignore: how to tell what education and training is "formal" or "extensive"; which skills are uniquely "in-patient"; and when are those skills sufficiently "specialized"? Mere job titles are silent on those points, leaving the parties, the Court, and putative class members to go through jobs and employee information to make uninformed guesses about what qualifies for inclusion in the class in any given case. A class definition that would require making a judgment call for each potential class member is not properly pleaded. *Earnest*, 923 F. Supp. at 1473–74.

## III. Plaintiffs Fail to Show How the Complaint Pleads Predominance

Plaintiffs also have the burden to adequately plead "a prima facie showing that the predominance requirement of Rule 23 is satisfied or that discovery is likely to produce substantiation of plaintiffs' allegations with respect to predominance." *In re Railway*, 395 F. Supp. 3d at 472 (striking class allegations for failure to adequately plead predominance). As UPMC set forth in its opening brief, class claims under the Sherman Act regularly fail because the "antitrust impact" element raises too many individualized issues. UPMC Br. at 10–11. So too, in this case. The alleged class will inevitably require assessing at least the following for each putative class member: UPMC's hospital presence in their area and how it evolved over time; staffing ratios at

that location; their unique alternative employment opportunities; and whether they received tuition assistance. *See* UPMC Br. at 11–14. The Opposition fails to excuse these deficiencies.

Plaintiffs first focus on a different element, dedicating two pages of the Opposition to the separate question of whether there is common proof of an antitrust *violation*. Opp. at 15–17. Antitrust *impact* is a distinct element, and to assess predominance, courts must "examine each element of a legal claim 'through the prism' of Rule 23(b)(3)." *Marcus v. BMW*, 687 F.3d 583, 600 (3d Cir. 2012). Thus, even where the issue of "whether there was a violation of the antitrust laws could be … common to the class," courts still strike class allegations where there is a failure to plead predominance as to "the second element [of Sherman Act claims], i.e., antitrust impact." *In re Railway*, 395 F. Supp. 3d at 505; *see also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 (3d Cir. 2015) ("[E]ach element … is relevant to assessing predominance" (citation omitted)).

Plaintiffs claim "UPMC exaggerates the significance of" variations in its presence throughout the Relevant Market, and argue it "is irrelevant to [their] theory of harm" if two putative class members "worked at a different UPMC facility." Opp. at 17. The only case they cite analyzed a separate question regarding damages, as it was undisputed there that the proposed class had "provided common evidence showing that the class paid more." *In re Suboxone Antitrust Litig.*, 967 F.3d 264, 270 (3d Cir. 2020). Plaintiffs' argument also ignores their own allegations. Plaintiffs expressly predicate their theory of liability on the allegation that "UPMC[] exercise[s] … monopsony power to suppress wages." Opp. at 1. Without monopsony power in a given area, there cannot be unlawfully suppressed wages—and thus cannot be antitrust impact. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) (impact must "result[] from the alleged violation"). And yet, Plaintiffs do not contest that across the Relevant Market, UPMC's presence is often under 10%, even dropping to 0%. *See* UPMC Br. at 4 (discussing Am. Compl.

¶¶ 73, 97). Inevitably, the Court will have to assess UPMC's presence in a given employee's location and whether that presence is sufficient to potentially cause antitrust impact—exactly the kind of individualized, market-by-market analysis that courts hold prevents certification. *See id.* at 11 (discussing cases). Plaintiffs never distinguish that body of precedent.

Plaintiffs are also wrong to shrug off the defect that their proposed class includes "employees with different job responsibilities and different job titles." Opp. at 17. Their cursory argument that "classes consisting of multiple job titles have been certified" in other cases is unavailing. *Id.* (citing *In re High-Tech Emp.*, 985 F. Supp 2d 1167 (N.D. Cal. 2013)). It is not the mere fact of different job categories that creates unavoidably individualized issues here; it is the broad array of different categories within the putative class, from custodial positions (e.g., "orderlies") that are equally transferrable to myriad non-healthcare employers, to state-licensed registered nurses with a vastly different array of employment options. As the Third Circuit has held, that kind of diversity necessarily raises individualized issues of antitrust impact. *See Weisfeld v. Sun Chemical Corp.*, 84 F. App'x 257, 263–64 (3d Cir. 2003). Plaintiffs again do not even try to address that authority.[5]

Finally, Plaintiffs argue it is enough that they have alleged "an economic report" showing the "effect UPMC's anticompetitive employment practices had" on the putative class. Opp. at 18. That report, however, purports merely to calculate "average wages in commuting zones" across

[5] On this point, the decision in *In re High-Tech Employees* is inapposite, as the proposed class there was limited to the Defendants' "job families for technical workers" that all fell under the general rubric of software engineers, programmers, IT professionals, and the like. 985 F. Supp. 2d at 1178, 1182. More germane to the Complaint in this case is an earlier decision in *In re High-Tech Employees*, where the plaintiffs sought to represent a broader class that included all salaried employees. The court rejected that class definition on predominance grounds, including for failure to show that "an impact to some of Defendants' employees would necessarily have resulted in an impact to all or nearly all employees." 289 F.R.D. 555, 582 (N.D. Cal. 2013).

various markets, and the average "wage differential" that UPMC hospital workers allegedly incurred. Am. Compl. ¶¶ 119–28. But as courts recognize (in cases Plaintiffs never acknowledge), an "average base wage suppression" does *not* demonstrate that common issues predominate with respect to antitrust impact, because it "does not indicate whether each putative class member suffered harm" from the alleged antitrust violation. *Reed v. Advocate Health Care*, 268 F.R.D. 573, 591 (N.D. Ill. 2009); *see also* UPMC Br. at 11. If anything, an *average* wage differential just confirms that some putative class members suffered no impact at all, and individualized inquiry will be required to sort them out. Plaintiffs have not alleged any way to demonstrate through common proof antitrust impact on a class-wide basis.[6]

## IV. Plaintiffs Do Not Dispute That They Predominantly Seek Monetary Damages

The Complaint purports to seek certification of the exact same class and for the exact same claims under both Rule 23(b)(2) and Rule 23(b)(3). *See* Am. Compl. ¶¶ 26, 187. The Opposition, however, does not dispute that this proposed class overwhelmingly seeks monetary relief. As UPMC pointed out, Plaintiffs filed suit to recover individualized damages awards to compensate each putative class member for allegedly suppressed wages, while making no effort to develop any request for injunctive relief. *See* UPMC Br. at 16. Plaintiffs do not disagree, effectively conceding that any request for an injunction is—by some distance—an afterthought. *See* Opp. at 12–13.

That bars certification under Rule 23(b)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011) (Rule 23(b)(2) does not authorize certification when putative class members seek "an individualized award of monetary damages"). Plaintiffs dismiss any such concern and accuse

[6] Plaintiffs' argument that UPMC imposes a uniform "effective rate" of pay across its own hospitals is irrelevant. Opp. at 18. That conflates having an alleged uniform compensation system with alleging the separate question of uniform antitrust impact across all members of the putative class. The point here is that nothing in the Complaint adequately pleads uniform impact.

UPMC of "misstat[ing] … the law," citing two non-binding, pre-*Dukes* decisions to argue that courts "routinely" certify the "equitable portion" of a claim under Rule 23(b)(2) and "the damages portion" of a claim under Rule 23(b)(3). Opp. at 12, n.8, 13.

Thus, at a minimum, it is undisputed that Plaintiffs cannot seek certification of a damages class under Rule 23(b)(2). Where the class claims for monetary relief fail under Rule 23(b)(3)—such as for a lack of predominance—Plaintiffs cannot avoid that result by invoking Rule 23(b)(2). They can either seek class-wide monetary relief under Rule 23(b)(3), or not at all.

Nor should the Court permit Plaintiffs to plead the same class under Rule 23(b)(2) for purposes of injunctive relief, and under Rule 23(b)(3) for purposes of damages. The better-reasoned cases to consider this kind of "hybrid" approach hold that where injunctive "relief is merely incidental to the monetary damages, then a Rule 23(b)(2) action is inappropriate, as is a hybrid class action." *Shamblin v. Obama*, 2015 WL 1909765, at *9 (M.D. Fla. Apr. 27, 2015). It makes no sense to "undo the careful interplay between Rules 23(b)(2) and (b)(3)" by trying to apply two different sets of certification standards and class procedures to the exact same set of class members just because they plead cursory, undeveloped references to injunctive relief. *McManus v. Fleetwood Enters.*, 320 F.3d 545, 554 (5th Cir. 2003); *see also Dukes*, 564 U.S. at 361–62 (assessing the differences between (b)(2) and (b)(3) classes); Fed. R. Civ. P. 23 advisory comm. notes (Rule 23(b)(2) inapplicable if "final relief relates" primarily "to money damages"). Courts thus reject as a matter of law—including at the pleading stage—Rule 23(b)(2) claims where the class mainly seeks damages. *See Semenko*, 2013 WL 1568407, at *10; *see also Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045, 1059 (N.D. Ohio 2022) (striking Rule 23(b)(2) request from the pleadings); *In re FCA LLC Litig.*, 334 F.R.D. 96, 107–08 (E.D. Mich. 2019) (rejecting any certification under Rule 23(b)(2) where the "main thrust of the plaintiffs'

complaint is the recovery of damages"); UPMC Br. at 16 (citing additional cases).[7]

The only post-*Dukes* authority that Plaintiffs cite highlights the pleading defect in this case. *In re Thalomid* involved two separate putative classes, one of which was an "Injunction Class" under Rule 23(b)(2) mostly comprised of class members who were "not seeking money damages" at all. 2018 WL 6573118, at *24 (D.N.J. Oct. 30, 2018). That is irrelevant, as Plaintiffs are seeking "damages **and** injunctive relief on behalf of" the same putative class. Opp. at 13 (emphasis added). Similarly, the injunction class in *In re Processed Egg* "represent[ed] a separate cause of action." 312 F.R.D. 124, 168 (E.D. Pa. 2015). That court also later observed favorably that "several courts have denied class certification of similar proposed 23(b)(2) classes on [a] financial goal finding alone," but simply rejected certification on other grounds. 321 F.R.D. 555, 558 (E.D. Pa. 2017). And *Jaraczewski* was a damages case with no claim for injunctive relief or request for certification under Rule 23(b)(2). *See generally* 2024 WL 3861248. None of those cases help Plaintiffs here, and their overwhelming focus on monetary relief precludes certification under Rule 23(b)(2).[8]

## CONCLUSION

The Court should strike all class allegations from the Complaint.

---

[7] *See also Sambrano v. United Airlines*, 347 F.R.D. 155, 180 n.4 (N.D. Tex. 2024) (rejecting hybrid certification); *Atwell v. Gabow*, 248 F.R.D. 588, 595 (D. Colo. 2008) (same). Any "hybrid" approach is particularly ill-conceived here, where the putative class includes former employees. Former employees have no claim for prospective relief, so an injunction could not "provide relief to each member of the class" and would be that much more incidental to damages. *Miller v. Grand Canyon Univ., Inc.*, 540 F. Supp. 3d 625, 638 (N.D. Tex. 2021) (quoting *Dukes* and rejecting Rule 23(b)(2) certification); *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 448 (S.D. Ind. 2012) (similar).

[8] While this ground is dispositive, the defects discussed above separately render the injunction class inappropriate. A court cannot make "a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified" when the class is defined by vague and indefinite criteria. *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187 (3d Cir. 2006). And as Plaintiffs admit, their proposed Rule 23(b)(2) and Rule 23(b)(3) classes are identical, so the failure to show predominance for Rule 23(b)(3) forecloses cohesiveness under Rule 23(b)(2). *See Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011).

Dated: October 7, 2024

Respectfully submitted,

*/s/ Rebekah B. Kcehowski*

Rebekah B. Kcehowski (PA ID No. 90219)
Anderson T. Bailey (PA ID No. 206485)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone: 412.391.3939
Fax: 412.394.7959
rbkcehowski@jonesday.com
atbailey@jonesday.com

David C. Kiernan (admitted pro hac vice)
JONES DAY
555 California St., 26th Fl.
San Francisco, CA 94104
Telephone: 415.626.3939
Fax: 415.875.5700
dkiernan@jonesday.com

Peter Schwingler (admitted pro hac vice)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Telephone: 612.217.8866
Fax: 844.345.3178
pschwingler@jonesday.com

*Counsel for Defendant UPMC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of October, 2024, a true and correct copy of this Reply Brief in Support of Defendant's Motion to Strike Class Allegations was filed and served on counsel of record via the United States District Court for the Western District of Pennsylvania's CM/ECF system.

*/s/ Rebekah B. Kcehowski*

Rebekah B. Kcehowski (PA ID No. 90219)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone: 412.391.3939
Fax: 412.394.7959
rbkcehowski@jonesday.com