**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VICTORIA ROSS, *et al.*** <br><br> **Plaintiffs,** <br> **v.** <br><br> **THE UNIVERSITY OF PITTSBURGH MEDICAL CENTER,** <br><br> **Defendant.** | **Civil Action No. 1:24-cv-00016-SPB** <br><br> **Electronically Filed** |

## UPMC'S POST-ARGUMENT BRIEF

The Court permitted the Parties to address "as briefly as possible" the new cases Plaintiffs cited for the first time at oral argument. Tr. 128:15-129:2, 149:25-2. Those cases confirm Plaintiffs' pleading failures and are not examples of "skilled class definitions [that] survived Rule 12." *Id*. at 112:13-14. The 69-pages of material submitted by Plaintiffs in their "Supplemental Filing" (ECF 65) is all the more remarkable for its failure to mention either of these two cases.

***First***, *Deslandes* offers another example of failure to plausibly allege a relevant market. *Deslandes v. McDonald's USA, LLC*, 81 F.4th 699, 702 (7th Cir. 2023). The problems with the McDonald's-only market there highlight similar deficiencies with the hospital-only market here:

> [Plaintiffs'] line of argument depends on treating "workers at McDonald's" as an economic market. That's not sound. People who work at McDonald's one week can work at Wendy's the next, and the reverse. People entering the labor market can choose where to go—and fast-food restaurants are only one of many options. If wages are too low at one chain, people can choose other employers.

81 F.4th at 702-03; *accord Deslandes*, 2022 WL 2316187, at *6 (N.D. Ill. Jun. 28, 2022) (holding this alleged McDonald's-only market "is implausible"). *Deslandes* reinforces, as UPMC has argued, that the failure to offer well-pleaded allegations ruling out alternative jobs (in a labor market) or products (in an output market) requires dismissal—or amendment—under *Queen City*'s

rule of reasonable interchangeability. *See, e.g.*, *Multiple Energy Techs., LLC v. Under Armour, Inc.*, 2021 WL 807722, at *2 (W.D. Pa. Mar. 3, 2021) (applying *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997)); *Molinari v. Consol Energy Inc.*, 2012 WL 5932979, at *6 (W.D. Pa. Nov. 27, 2012) (same); *Cable Line, Inc. v. Comcast*, 2018 WL 2209518, at *8 (M.D. Pa. May 14, 2018) (same), *aff'd* 767 F. App'x 348, 351-52 (3d Cir. 2019).

*Deslandes* similarly confirms that merely invoking "specialized skills" is insufficient to rule out employers as reasonable alternatives. The Seventh Circuit accepted that McDonald's employees "acquire business-specific . . . skills." 81 F.4th at 704; *compare* *Deslandes*, 2018 WL 3105955, at *3 (N.D. Ill. Jun. 25, 2018) ("Plaintiff alleges that some of the skills she developed as a manager of a McDonald's outlet were not transferable to management positions at [other] employers."), *with* Am. Compl. (ECF 31) ¶ 56 ("Specialized workers are only able to perform specialized tasks in a few firms . . . ."). But such allegations were *insufficient* to plead that "workers at McDonald's" could not substitute to alternative employers within the fast-food industry. *Deslandes*, 81 F.4th at 702-03. Similarly here, Plaintiffs' conclusory allegations of "specialized" skills do not plead that "pharmacy workers," "nursing assistants," "orderlies," and all other "Skilled Healthcare Workers" cannot find reasonably comparable jobs in the healthcare industry beyond inpatient care within the four walls of a hospital—including, for example, at retail pharmacies or nursing homes.

By contrast, the present case and *Deslandes* are unlike *Todd*, which held that specific allegations about industry wages, industry recognition, and cross-elasticity (among others) were adequate to plead that switching to an *entirely different industry* was not a reasonable alternative for the employees at issue. *Todd v. Exxon Corp.*, 275 F.3d 191, 203, 205 (2d Cir. 2001). The *Todd* complaint Plaintiffs cite in their "Supplemental Filing" confirms these distinctions with

express allegations showing, for instance, that the industry itself took actions demonstrating that positions outside the petrochemical industry were not reasonably interchangeable. *See, e.g.*, ECF 65 at Ex. A ¶ 99 (alleging key industry metrics used in setting wages and that the industry "recognize[d] the relatively low level of cross-elasticity of demand . . . as between the oil and petrochemical industry and other industries"); *see also id.* ¶¶ 97-101, 115-16. No such allegations are present here. Plaintiffs at argument repeatedly cited *Todd* to assert that (if adequately supported by allegations) a product market may be limited to employees of a single industry. *E.g.*, Tr. 72:18-73:7, 140:3-11. That is beside the point for Plaintiffs here because they attempt to limit their supposed product-market to inpatient hospital jobs, not healthcare-industry jobs. There are no allegations in the Amended Complaint to plausibly exclude other healthcare-industry roles for all Plaintiffs' job titles in their "Skilled Healthcare Workers" definition.[1]

And, finally, Plaintiffs' suggestion at argument that *Deslandes* supports their proposed class is misplaced. Tr. 111:24-112:14. The district court *rejected* plaintiffs' class certification motion on predominance, emphasizing the mismatch between plaintiffs' putative nationwide class and the local markets where class members sell labor. 2021 WL 3187668, at *12-13 (N.D. Ill. July 28, 2021). The Seventh Circuit invited the district court to revisit that ruling only as it related to plaintiffs' asserted *per se* violation of Sherman Act § 1. 81 F.4th at 703-04. That has no bearing here: Unlike Plaintiffs' § 2 claims or *Deslandes's* rule-of-reason claim, the Seventh Circuit does

[1] Plaintiffs' submission also revisits the 17-year-old *Clarke* case and argues (at 3 n.1) that UPMC never attempted to distinguish the decision. That is false. UPMC addressed the case at length in its Reply, including that the labor market there was limited to RNs, not the broad swath of jobs here, and explained that "the [*Clarke*] parties *agreed* that hospital and non-hospital Registered Nurse positions in Memphis could at that time 'differ in "benefits, hours, working conditions, and other relevant factors,"' and the plaintiffs [there] alleged (among other facts) significant wage and other career differentials between hospital and non-hospital Memphis Registered Nurses." UPMC Reply (ECF 55) at 5-6 (quoting *Clarke v. Baptist Mem'l Healthcare Corp.*, 2007 WL 9870961, at *10-11 (W.D. Tenn. May 17, 2007)); *accord* ECF 65 at Ex. B ¶¶ 41-45. As UPMC's Reply (ECF 55 at 5-6) explained, those allegations are not present here—nor can Plaintiffs bootstrap unpleaded allegations from another case to support their broader product market here.

not require market power in a relevant market to show "naked agreements among competitors" are *per se* § 1 violations. *Id*.

***Second***, *Robinson*, Plaintiffs' other new case, reinforces their failure to allege fraudulent concealment. *See* *Robinson v. Jackson Hewitt, Inc.*, 2019 WL 5617512, at *5 (D.N.J. Oct. 31, 2019). This knocks out any damages from more than four years before the complaint was filed, even if the continuing violations doctrine applied. *E.g.*, *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189-90 (1997); *accord* DOJ Statement of Interest (ECF 50) at 21 n.3.

As to pleading fraudulent concealment, *Robinson* is clear: A plaintiff must allege—among other things—"'that the defendant actively misled the plaintiff'" and those allegations must "meet the heightened pleading requirements of Rule 9(b)." 2019 WL 5617512, at *5. In *Robinson*, plaintiffs' allegations that defendants "'did not inform employees of the Conspiracy'" and gave "'false and pretextual explanations for hiring and compensation decisions'" fell far short of Rule 9(b)'s requirement of alleging "'the date, time and place of the alleged fraud or otherwise inject precision.'" *Id*. So too here: Employees must know about a supposed "blacklist" if it is to influence them. And speculation at argument about what an employment file might contain fails to plead either *fraud* or *concealment*, and is at most a claim that UPMC "did not inform employees of the Conspiracy," which *Robinson* held insufficient. *See id*.

Plaintiffs offered *Robinson* at argument as support for their class definition. Tr. 110:24-111:23. But UPMC can find *no record* that the *Robinson* defendants' motion to strike or a subsequent class certification dispute was ever decided in that action. In fact, defendants' motion to strike remained pending when the parties there reached a settlement. *See Robinson*, No. 2:19-cv-09066 (D.N.J. Mar 28, 2019), ECF 258 (motion to strike), ECF 306 (order staying proceedings

pending settlement). Other issues in *Robinson*, involving another alleged *per se* restraint of trade in violation of § 1, are inapposite to this § 2 case. *See* 2019 Wl 5617512 at *7.

* * *

In even these limited post-argument submissions, Plaintiffs are *still* trying to plug holes in their case with new authorities and argument. Citing *two* new cases, for instance, Plaintiffs (ECF 65 at 4) attempt to shoehorn UPMC's geographic market objections into mere opposition to using statistics. But UPMC's actual argument is that Plaintiffs' geographic market is implausibly drawn based on UPMC's presence (not market realities), and that Plaintiffs' assertions in their Opposition brief about "commuting zones" have no basis in the actual allegations of the Amended Complaint, which alleges nothing about the commuting or relocating preferences of the workers at issue. Reply (ECF 55) at 6-8. Plaintiffs never explain how these "studies"—which separately refute their product market—somehow allege plausible commuting distances for any of the jobs at issue. *Id*.

Similarly, Plaintiffs spin up three new pages of argument on the statute of limitations. But "UPMC's cases" that Plaintiffs attempt to distinguish (ECF 65 at 6) were cited in UPMC's Opening Brief (ECF 40 at 24-25). After an Opposition brief and three turns at the podium, Plaintiffs should not be adding new critiques of those cases, and none of the arguments they revisit in their "Supplemental Filing" even tries to defend the actual allegations of fraudulent concealment here, which fall far short of what Rule 9(b) requires. *See* Opening Br. (ECF 40) at 22-25; Reply Br. (ECF 55) at 18-20.

Dated: February 4, 2024

Respectfully submitted,

/s/ *Rebekah Kcehowski*
Rebekah B. Kcehowski
(PA ID No. 90219)
Anderson T. Bailey (PA ID No. 206485)
Daniel P. Johnson (PA ID No. 335058)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone: 412.391.3939
Fax: 412.394.7959
rbkcehowski@jonesday.com
atbailey@jonesday.com
dpjohnson@jonesday.com

David C. Kiernan (admitted *pro hac vice*)
JONES DAY
555 California St., 26th Fl.
San Francisco, CA 94104
Telephone: 415.626.3939
Fax: 415.875.5700
dkiernan@jonesday.com

Peter Schwingler (admitted *pro hac vice*)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Telephone: 612.217.8866
Fax: 844.345.3178
pschwingler@jonesday.com

*Counsel for Defendant UPMC*

**CERTIFICATE OF SERVICE**

I hereby certify that UPMC's Post-Argument Brief was filed and served on counsel of record via the United States District Court for the Western District of Pennsylvania's CM/ECF system.

/s/ *Rebekah Kcehowski*
Rebekah B. Kcehowski
(PA ID No. 90219)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone: 412.391.3939
Fax: 412.394.7959
rbkcehowski@jonesday.com